## MITCHELL et al. v. FISHER et al.

No. 21964.    April 24, 1934.

Baldwin and Lamun, for plaintiffs in error.

Charles E. Wells, for defendants in error.

PER CURIAM. This action was commenced in the district court of Pottawatomie county by Thomas Fisher, one of the defendants in error, against the plaintiffs in error for money due on a note of $1,000 secured by a real estate mortgage. Upon conclusion of the testimony and both sides having rested, plaintiff moved for a directed verdict, which the court sustained, from which the defendants have appealed. The parties will be referred to as they appeared in the trial court.

Plaintiff Thomas Fisher alleges that on February 11, 1930, defendants S. B. Mitchell and Alice Mitchell, for a good and valuable consideration, made, executed, and delivered to J. C. Fisher their certain promissory note, due five years after date, and that by reason of the execution of said note, said defendants became liable and bound to pay same according to the terms thereof; that at the same time and place, and as a part of the same transaction, defendants executed their mortgage covering certain described real estate, as and for security for said note; that thereafter, on March 4, 1920, said J. C. Fisher sold and assigned said note and mortgage for a valuable consideration to the plaintiff Thomas Fisher; that defendants paid interest on said note until February 11, 1927, when, the principal being due, it was by mutual consent extended until February 11, 1928; that said note became due and payable February 11, 1928, and defendants have failed to pay same although often requested, and that plaintiff is therefore entitled to a judgment for the amount claimed due, $931.50, with interest at 10 per cent. from February 11, 1928, together with an attorney fee of $50 and a charge of $7.50 for supplemental abstract and foreclosure of the said mortgage given as security.

The defendants, S. B. Mitchell and Alice Mitchell, filed their answer and cross-petition in which they admit the execution of the note and mortgage, but deny making the extension agreement with plaintiff, and deny plaintiff Thomas Fisher is the owner of said note and mortgage.

For further answer and by way of cross-petition, defendants say that, on said 11th day of February, 1920, the said J. C. Fisher did, at the instance and request of defendants, loan to them the sum of $850 and no more; that at said time, as a condition of making said loan, it was required that defendants execute 10 coupon notes in the sum of $35 each, payable August 11, 1920, and February 11, 1921, and on the 11th day of August, and 11th day of February each year thereafter for the full term of said loan.

That by reason of executing said coupon notes, said J. C. Fisher demanded, reserved, and charged for the use of said $850 from the 11th day of February, 1920, to the 11th day of February 1925, in the total sum of $500, being $150 in the face of the note and $350 by way of coupons, which said amount was greatly in excess of 10 per cent., the greatest rate that could be taken, charged, or reserved for use of said $850.

That on February 11, 1925, defendants paid $100 and executed to said J. C. Fisher their two certain renewal interest notes, in the sum of $31.50 each, due August 11, 1925, and February 11, 1926, and paid $18 cash, which amount would be 7 per cent. on the balance due of the note as represented by the coupons and 2 per cent. to pay as commission.

On February 11, 1926, defendants again executed their two certain renewal interest notes in the sum of $31.50 each, due August 11, 1926, and February 11, 1927, and paid $18 cash, and thereafter, on February 11, 1927, again made their two certain renewal interest notes in the sum of $31.50 each, due August 11, 1927, and February 11, 1928, and paid $18 cash.

That therefore, the total amount of interest reserved, demanded, and charged by the said J. C. Fisher for the said loan of $850 would be as follows: Placed in face of note $150; 10 coupon notes of $35 each, or $350; six renewal interest notes of $31.50 each, or $189 and three additional interest payments of $18 each, or $54, making a total of $743.

That by virtue of charging a greater rate of interest for said $850 than allowed by law, there has been forfeited to defendants double the amount of $743, to wit, $1,486, for which amount defendants pray judgment against plaintiff, together with an attorney fee of $150.

Thereafter reply of plaintiff was filed in which he denies each and every allegation of new matter in said answer and cross-petition contained, and prior thereto, on April 7, 1928, J. C. Fisher was made a party defendant.

Motion for new trial having been overruled and denied, defendants appeal to this court and submit that there is error in said proceedings, which assignments of error are presented in the brief of plaintiffs in error as follows:

First: Error of the court in directing a verdict for plaintiff and assignee.

Second: That the verdict was contrary to the law and the evidence.

Third: That the judgment is contrary to the verdict.

Fourth: That the court erred in its failure to grant defendants a new trial.

It will be seen that the first assignment of error will be sufficient for consideration, as to the action of the court in directing a verdict for plaintiff, and its determination will dispose of the remaining assignments.

It would appear from the testimony of both plaintiff and defendant S. B. Mitchell that the loan was to be made on a 7 per cent. and a 2 per cent. basis due in five years. and that the extension agreements from year to year after maturity were on the same basis.

It appears further from the testimony of the defendant S. B. Mitchell that he owed the Interstate Mortgage Trust Company $548.20 and the State National Bank $302 which he authorized Mr. Fisher to pay. He admits there was used of the proceeds of the loan, $1 for recording his deed, which was taken up when the above indebtedness was paid, $1.35 for recording the mortgage, 32 cents tax on same, and $3.50 expense bringing the abstract down, and receiving a balance of $43.63 in cash paid to him, making an exact total of $900, but says nothing was said between himself and Fisher about who was to pay the expenses of recording his deed, mortgage, tax, and bringing the abstract down. The lender says they were expressly authorized by borrower. The borrower says there was nothing said about these charges. We will take judicial notice of a custom universally followed that these charges are paid by the borrower, and where incurred in good faith and reasonable, are proper and legitimate charges.

"Fees paid by a lender for procuring an abstract of title to real estate, where offered as security for a loan then under negotiation, together with recording fees so advanced where incurred in good faith, and reasonable, are proper and legitimate charges, and may be included in the note given, without rendering it usurious even though the total cost to the borrower exceed the lawful rate of interest." Gault v. Thurmond, 39 Okla. 673, 136 P. 742.

Therefore we find that $856.37 was necessary to pay the obligations of the borrower together with the necessary and legitimate expense of obtaining the loan, and that he got the use and benefit of said amount. That he was paid the sum of $43.63 by check as due him, making a total of $900 he received of the proceeds of said loan. This refutes and contradicts very conclusively that he only borrowed $850, as claimed, as we can hardly reconcile, or by mathematical calculation reach a conclusion, that it was intended or contemplated borrowing $850 to take up and discharge $900 of obligations and expense.

It further appears from the record, and is conclusive, that the 2 per cent. additional was for commission and everything that the borrower and lender did in closing the transaction appears to carry out this agreement. This being computed and deducted from the loan makes exactly the $1,000 which was borrowed. It was also carried into and followed in the renewal agreements, covering in all a period of time of eight years before foreclosure was begun.

From our calculation it cannot be found that the whole amount of interest, reserved and collected, would exceed 9 per cent. for the whole time this loan ran, and it is within the law.

The case of Lewis v. Vassar (Wash.) 232 P. 313, seems to apply to the facts in this case. In that case the plaintiff had made a note for $10,000, and at the time of making same had received $9,500. The interest laws of Washington permitted the charging of interest at the rate of 12 per cent. per annum. Interest was also provided for in the face of the note, so if the loan was considered a $9,500 loan, the transaction would have been a violation of the usury laws. On the other hand, if it were considered a $10,000 loan, the same was free from the taint of usury. In holding that the transaction was a $10,000 loan, the Supreme Court of Washington said:

"The respondent first contends that although the note calls for a principal of $10,-000, as a matter of fact she only received $9,500, and that, in determining whether usury exists, it is necessary to calculate interest upon that principal. It would seem that the learned trial judge accepted this view. We think it is wrong. The principal of the loan was, as recited in the note, $10,-000. It is true that in one sense the respondent actually received but $9,500, but this is so because she paid a part of her interest in advance, and this she paid out of the principal sum she borrowed. The transaction amounts to this and no more—that at the time the loan was made the appellant paid respondent $10,000 and she at once thereafter paid back $500 to apply on the interest during the three-year period of the note, or, which is the same thing, the appellant deducted from the $10,000 the $500 of interest. It seems to us to necessarily follow from this analysis that the amount of the loan was $10,000."

From the above reasoning we conclude that the Mitchells actually received $1,000, and that they had at once thereafter paid out of the same $1,000 the 2 per cent. commission in advance during the five-year period of the loan, and continued to do so on the renewals.

We are inclined to follow the theory and reasoning of the Washington case, as our own declaration of the policy of the law to be followed has been enunciated by this court in the case of Martin v. Oklahoma State Bank, 86 Okla. 113, 206 P. 824, as follows:

"In determining whether a contract for the payment of money is usurious, if it appears that the contract or transaction is susceptible of two constructions, one lawful and the other unlawful, the former will be adopted. This is on the theory that the parties to the contract have contracted within the law."

It further appears that the lower court must have found in rendering judgment for plaintiff that the assignee, Thomas Fisher, was the owner of the note and mortgage and was a bona fide purchaser before maturity. There is no evidence that he was not such a purchaser, and neither that he ever received more than 7 per cent. interest per annum on the loan, and we are not disposed to disturb the findings of fact by the court in these respects.

We will refer to the third assignment of error, in which plaintiffs in error complain that the verdict prepared by the court, and which the court directed a juror to sign, stated no amount. It is the better practice that the amount be stated even in a directed verdict, but the purpose of the motion interposed for a directed verdict, and as intended by counsel representing

plaintiff, was to withdraw the case from the consideration of the jury, leaving it no discretion or duty to perform in the matter.

The issues were to be determined by the court, and it was not the answer of the jury as to the amount due, but the answer of the court. The motion is equivalent to a submission to the court of all questions of fact upon which the verdict of the jury is not requested. The giving of a peremptory instruction for one party to an action is in effect a withdrawal of all other instructions for both parties.

We find no error in the action of the trial court, and the judgment should be affirmed. Defendants, in prosecuting this appeal, executed a supersedeas bond, and plaintiff has requested this court to enter judgment upon the said supersedeas bond, and there appearing no good reason for refusal of said request, judgment is accordingly rendered in favor of plaintiff on said supersedeas bond against the defendants and their surety, Walsie Ewton, journal entry to be prepared and submitted accordingly.

The Supreme Court acknowledges the aid of District Judge Vernor, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.